**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

DERRICK REAVES,
*on behalf of himself and others similarly situated*,

       Plaintiff,

         v.

BFY BRANDS, INC.

       Defendant.

_____

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

      Plaintiff DERRICK REAVES (hereinafter, "Plaintiff REAVES" or "Plaintiff"), individually and on behalf of all other persons similarly situated in New York and the United States, by his undersigned attorneys, pursuant to this Class Action Complaint against the Defendant, BFY BRANDS, alleges the following:

## NATURE OF THE ACTION

      1.    This is a consumer protection action arising out of the deceptive and otherwise improper business practices that Defendant, BFY BRANDS, INC. (hereinafter, "BFY" or "Defendant"), engages in through the packaging, marketing, and sale of the 1.0 ounce Popcorners® products (the "Products"). The Products are sold in bags with the approximate dimensions of 8 inches in height (with 7 inches of vertical capacity) by 5.5 inches in width with

1 oz. of chips per bag. The Products are regularly sold at numerous outline outlets and brick-and-mortar stores such as Duane Reade, CVS, Rite Aid, and Amazon.com. The Products  are sold in various flavors as follows:

    a.   Smokin' Jalapeno White Chedder
    b.   Sweet Heat Chili
    c.   Sweetly Salted Caramel
    d.   Cinema Style
    e.   Cheddar Feel-Good
    f.   Salt of The Earth
    g.   Carnival Kettle

Below is an image of the Products:



2.      The Products are mass produced and packaged in non-transparent bags of standardized size and composition, with a standardized quantity of chips in each bag.

3.      The Products are sold by BFY under its "Our Little Rebellion" line of products. As related by Business Wire, Our Little Rebellion has the following vision: "Our vision with Our Little Rebellion is to give consumers undeniably delicious snacks that don't sacrifice  taste, nutrition, or quality, and our new packaging better communicates this

commitment while creating cohesion across all of our brand pillars," said Paul Nardone, chief executive officer at BFY Brands. "What began as PopCorners, Our Little Rebellion is now a righteous family of snacks that we believe will change the face of the category by challenging people to expect more from their snacks. From pioneering new ways to process our ingredients to transparently sourcing each non-GMO corn crop, we're committed to striving for the best in everything we do, so all our fans can enjoy something a little better."[1]

4.      Defendant manufactures, markets and sells the Products with non-functional slack-fill (unnecessary empty space) in violation of the Federal Food Drug & Cosmetic Act ("FDCA") Section 403(d) (21 U.S.C. 343(d)), the Code of Federal Regulations Title 21 part 100, *et seq.*, as well as the laws of New York State, the other 49 states, and the District of Columbia, which impose requirements identical to federal law. Defendant's bags are consequently made, formed or filled as to be misleading.

5.      Slack-fill is air or filler material within a packaged product. *Non-functional* slack-fill is slack-fill that serves no legitimate purpose, and misleads consumers about the quantity of food they are purchasing. When consumers purchase a package of Defendant's Product, they are getting fewer chips than they bargained for. They are effectively tricked into paying for air, because each Product bag contains a large amount of non-functional slack-fill.

6.      The size of the Product bags in comparison to the volume of the chips contained therein makes it appear to Plaintiff and Class members that they are buying more chips than what is actually being sold. Plaintiff and Class members are denied the benefit of their bargain because they pay for full bags of the Products, but actually receive bags that are mostly filled with air.

---

[1] http://www.businesswire.com/news/home/20160804005383/en/Rebellion%E2%84%A2-Launches-Bold-PopCorners%C2%AE-Bean-Crisps%E2%84%A2-Crinkles%E2%84%A2

7.      That the slack-fill in the Products is non-functional is proven by comparisons with similar competitor products. For example, products of 1.75 oz. Doritos® Popcorn are packaged in bags that are essentially identical to the Product bags. The two bags are identical in height and nearly identical in width, yet the fill-line in the Doritos® reaches significantly higher than in the Product, 5.0 inches out of a total bag height of 7.0 inches, leaving only 29% slack-fill. In comparison, chips in the Products occupy 3.25 inches, leaving about 54% slack-fill. Despite being roughly the same size, the Doritos® bag contains 75% more chips by weight. If Doritos® did not require 54% slack-fill, then neither does Defendant, whose slack-fill is just a gambit to confuse purchasers about the quantity of food they are purchasing.

8.      This conclusion is further confirmed by the comparison between a 1.0 oz. Product bag and a 1.0 oz. bag of Cosi® kettle cooked potato chips.



Both bags contain 1 oz. of product, yet Cosi® is able to fit that 1 oz. into a significantly smaller bag, thereby proving that the excess space in the Product bag is not functionally necessary. In addition, potato chips are significantly less dense than corn/tortilla chips, with potato chips measuring at 3.5-5.6 lbs./sq. ft. and corn chips measuring at 7.0 lbs./sq. ft. This means 1.0 oz. of Product should occupy less space than 1 oz. of the Cosi® chips. Furthermore, corn chips are significantly less fragile than potato chips. This leaves Defendant with that much less of an excuse for its slack-fill, which cannot be justified on the basis of the Product's fragility.

9.     All Product bags are standardized to be mostly filled with air. Class members' Product bags were sized and filled to the same common standard.

10.     Plaintiff brings this proposed consumer class action on behalf of himself and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not for resale.

11.     During the Class Period, Defendant manufactured, marketed and sold the Products throughout the United States and the State of New York. Defendant purposefully sold the Products with non-functional slack-fill as part of a systematic practice.

12.     Defendant violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, *et seq.*;
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.*;
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.*;
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1*, et seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS Section 505/1, *et seq.*;
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, *et seq.*;
16) Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.*;
17) Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, *et seq.*;
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et seq.*;
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.*;
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
23) Michigan Consumer Protection Act, § 445.901, *et seq.*;
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

*25)* Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;
*26)* Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;
*27)* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.*;
*28)* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;
*29)* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;
*30)* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.* ;
*31)* New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;
*32)* New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;
*33)* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*, and New York False Advertising, N.Y. Gen. Bus. Law § 350, *et seq.*;
*34)* North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;
*35)* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes § 75-1, *et seq.*;
*36)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. *et seq.*;
*37)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;
*38)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;
*39)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § 201-1, *et seq.*;
*40)* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;
*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;
*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37 24 1, *et seq.*;
*43)* Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.*;
*44)* Texas Stat. Ann. § 17.41, *et seq.*, Texas Deceptive Trade Practices Act, *et seq.*;
*45)* Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, *et seq.*;
*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;
*47)* Virginia Consumer Protection Act, Virginia Code Ann. §59.1-196, *et seq.*;
*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;
*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;
*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, *et seq.*;
*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. § 40-12-101, *et seq.*

13.     Defendant has deceived Plaintiff and other consumers by inducing Plaintiff and Class members to reasonably rely on Defendant's misrepresentations and purchase the Products which Plaintiff and Class members would not have purchased at the given price had they known the truth. Through these unfair and deceptive practices, Defendant has collected millions of dollars from the sale of its Products that it would not have otherwise earned. Plaintiff brings this action to stop Defendant's deceptive practice.

14.     Plaintiff expressly does not seek to enforce any state law that has requirements beyond those established by federal laws or regulations.

## JURISDICTION AND VENUE

15.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

16.     This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to New York Statute N.Y. CVP. Law § 302, because its headquarters is in New York.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to class members residing in this District, and the Defendant is a resident of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this district.

## PARTIES

*Plaintiff*

18.     Plaintiff REAVES is, and at all relevant times hereto has been, a citizen of the state of New York and a resident of New York County. On November 09, 2017, Plaintiff REAVES purchased one bag of the Product containing 1.0 oz. Popcorners® Carnival Kettle corn-chips for personal consumption. Plaintiff REAVES purchased the Products at jack's 99¢ Store in New York, New York. Plaintiff REAVES purchased the Products for $0.75, and was financially injured as a result of Defendant's deceptive conduct as alleged herein because he did

not receive the quantity that he paid for and was promised. Plaintiff REAVES paid to receive one bag of chips that were functionally full, but the bag Plaintiff REAVES received contained approximately 54% slack-fill, most of which was non-functional slack-fill.

19.     As the result of Defendant's deceptive conduct as alleged herein, Plaintiff REAVES was injured when he paid full price for the Products but did not receive full containers. Plaintiff was economically injured by the shortfall in his Product bag. His injury was equivalent to the proportion of his purchase price that paid for non-functional slack-fill in the Products. Should Plaintiff REAVES encounter the Products in the future, he could not rely on the truthfulness of the packaging, absent corrective changes. Plaintiff REAVES would still be willing to purchase the Products in its current formulation, as long as he is not compelled to pay for empty space within the containers when buying the Products.

### Defendant

20.     Defendant BFY BRANDS is a corporation organized under the laws of Delaware with its headquarters at 79 Industrial Place, Middletown, NY 10940. Defendant manufactures, packages, distributes, advertises, markets, and sells the Products to millions of customers nationwide. Defendant's address for service of process is 1209 Orange St., Wilmington, DE.

21.     The packaging, and advertising for the Products, relied upon by Plaintiff, were prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such packaging and advertising were designed to encourage consumers to purchase the Products and misled reasonable consumers, including Plaintiff and the Class, into purchasing the Products. Defendant owns, markets and distributes the Products, and creates and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive packaging and advertising for the Products.

# FACTUAL ALLEGATIONS

**Identical Federal and State Law Prohibit Misbranding Foods by Packaging Them With Non-Functional Slack-Fill**

22.     Under § 403(d) of the FDCA (21 U.S.C. § 343(d)), a food shall be deemed to be misbranded "[i]f its container is so made, formed, or filled as to be misleading."

23.     The FDA has implemented § 403(d) through 21 C.F.R. § 100.100, which states:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

24.     The FDA has defined non-functional slack-fill as any slack-fill in excess of that required to achieve the functional purposes listed in 21 C.F.R. § 100.100(a):

FDA advises that the exceptions to the definition of "nonfunctional slack-fill" in §
100.100(a) apply to that portion of the slack-fill within a container that is
necessary for, or results from, a specific function or practice, e.g., the need to
protect a product. <u>Slack-fill in excess of that necessary to accomplish a particular
function is nonfunctional slack-fill.</u> Thus, the exceptions in § 100.100(a) provide
only for that amount of slack-fill that is necessary to accomplish a specific
function. FDA advises that <u>these exceptions do not exempt broad categories of
food</u>, such as gift products and convenience foods, from the requirements of
section 403(d) of the act. For example, § 100.100(a)(2) recognizes that some
slack-fill may be necessary to accommodate requirements of the machines used to
enclose a PRODUCT in its container and is therefore functional slack-fill.
However, § 100.100(a)(2) <u>does not exempt all levels of slack-fill in all
mechanically packaged products from the definition of nonfunctional slack-fill</u>.

58 FR 64123, 64126 (emphasis added).

25.     The possibility that some portion of the slack-fill in Defendant's Products may be

justified as functional based on the exemptions in §100.100(a) does not justify slack-fill that is in

excess of that required to serve a legitimate purpose—protecting contents, accommodating the

machines that enclose the contents, accommodating settling, etc. Such slack-fill serves no

purpose other than to mislead consumers about the quantity of food they are actually purchasing.

*See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 405 (E.D.N.Y. 2010) ("Misleading

consumers is not a valid reason to package a product with slack-fill. *See* 21 C.F.R. §

100.100(a)(1–6).").

26.     The food labeling laws and regulations of New York impose requirements that

mirror federal law.

27.     New York Agm. Law § 201 specifically provides that "[f]ood shall be deemed to

be misbranded. . . If its container is so made, formed, colored or filled as to be misleading."

Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations (1 NYCRR

§ 259.1), incorporates by reference the regulatory requirements for food labeling under the

FDCA:

"For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the *Code of Federal Regulations* (revised as of April 1, 2013). . . in the area of food packaging and labeling as follows: . . (2) Part 100 of title 21 of the *Code of Federal Regulations* [21 C.F.R. 100 et seq.], containing Federal definitions and standards for food packaging and labeling *General* at pages 5-10. . . ."

1 NYCRR § 259.1(a)(2).

28.     Courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349. *See Ackerman v. Coca-Cola Co*., No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular,' and incorporates the FDCA's labeling provisions"); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *11 (S.D.N.Y. Oct. 26, 2016) ("Here [in a slack-fill case brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA.").

## **Defendant's Products Contain Non-Functional Slack-Fill**

29.     The Popcorners® Product packages are bags that are approximately 7 inches of vertical capacity by 6 inches in width. The chips only fill the bottom 3.25 inches of the bag, leaving 3.75 vertical inches of air.[2] The chips occupies 46%[3] of the bag; air occupies the other 54% of the bag, leaving 54% slack-fill[4]:

---

[2] 7 inches of vertical capacity – 3.25 inches of chips = 3.75 inches of slack-fill.

[3] $\frac{3.25 \text{ inches of chips}}{7 \text{ inches of vertical capacity}}$ = Approximately 46% of the Products filled with chips.

[4] $\frac{3.75 \text{ inches of slack} - \text{fill}}{7 \text{ inches of vertical capacity}}$ = Approximately 54% slack-fill is in the Products.



30.     While some of Defendant's slack-fill may have functional justifications related to packaging requirements or the effects of settling, Defendant's total slack-fill far exceeds the amount necessary, and almost all of the slack-fill is therefore nonfunctional. This is proven by the fact that the slack-fill in Defendant's Products is significantly greater than the slack-fill in the packaging of competitor's Doritos bag, but is a similarly sizes bag. Below is a comparison of the slack-fill in the Products (left) with the slack-fill in the Doritos bag (right):



31.     The dimensions of the Doritos bag are approximately 7 inches of vertical capacity and 4.75 inches in width. The chips inside the Doritos bag fills approximately 5 inches of the bag, leaving only about 2 inches of empty space at the top of the bag, i.e. merely 29%[5] slack-fill, significantly less than the 54% slack-fill in the Products.

32.     Slack-fill in excess of 29% in the Products is **<u>certainly</u>** non-functional, as the comparable Doritos bag demonstrates, so all slack-fill in the Products in excess of 33% is certainly non-functional. However, Defendant fraudulently induces sales at inflated prices by tricking consumers into believing that they are purchasing a bag containing only a). chips and b). the amount of slack-fill that is necessary, i.e. at most 29% slack-fill. The Product bags have

---

[5] $\dfrac{7 \text{ inches of vertical capacity} - 5 \text{ inches of chips}}{7 \text{ inches of vertical capacity}}$ = Approximately 29% slack-fill.

significant amounts of non-functional slack-fill instead of chips, so consumers who purchased the Products received far less chips than they bargained for.

**A Reasonable Consumer Would Rely Upon And Be Deceived By Defendant's Misleading Packaging**

33.     Plaintiff and Class members viewed Defendant's deceptive and misleading Product packaging, and reasonably relied in substantial part on its implicit representations of quantity and volume when purchasing the Products. Plaintiff and Class members were thereby deceived into deciding to purchase the Products. The perceived volume of the chips Plaintiff and Class were receiving was a material factor in their evaluation of the Products' value.

34.     The Products are misbranded regardless of any disclosures about contents settling and regardless of whether or not weight is labeled accurately. Under Federal regulations, "label statements cannot correct nonfunctional or misleading fill." Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64129 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100).

35.     Even if Defendant's net weight disclosures are accurate, it does not eliminate the basic deception. The FDA has confirmed this in unequivocal terms:

> FDA disagrees with the comments that stated that net weight statements protect against misleading fill. FDA finds that the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading.

58 FR 64123, 64128 (emphasis added).

36.     The FDA's findings are grounded in congressional intent:

> Section 403(e) of the act requires packaged food to bear a label containing an accurate statement of the quantity of contents. This requirement is separate and in addition to section 403(d) of the act. To rule that an accurate net weight statement protects against misleading fill would render the prohibition against misleading fill in section 403(d) of the act redundant. In fact, Congress stated (S. Rept. No. 493, 73d Cong., 2d sess. 9 (1934)) in arriving at section 403(d) of the act that that section is "intended to reach deceptive methods of filling where the package is

16

only partly filled and, <u>despite the declaration of quantity of contents on the label</u>, creates the impression that it contains more food than it does." Thus, Congress clearly intended that failure to comply with either section would render a food to be misbranded.

58 FR 64123, 64128-64129 (emphasis added).

37.     Congress' intent was based on its investigation of consumer behavior

Consumers develop expectations as to the amount of product they are purchasing based, at least in part, on the size of the container. The congressional report that accompanied the FPLA stated: "<u>Packages have replaced the salesman</u>. Therefore, it is urgently required that the information set forth on these packages be sufficiently adequate to apprise the consumer of their contents and to enable the purchaser to make value comparisons among comparable products" (H.R. 2076, 89th Cong., 2d sess., p. 7 (September 23, 1966)). <u>Thus, packaging becomes the "final salesman" between the manufacturer and the consumer, communicating information about the quantity and quality of product in a container</u>. Further, Congress stated (S. Rept. 361, supra at 9) that "<u>Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label</u>."

58 FR 64123, 64131 (emphasis added).

38.     Congress recognizes that the size of a package is in and of itself a kind of sales pitch, even if not made with words or numbers. Thus, consumers can reasonably rely on packaging size as a representation of quantity regardless of whatever is printed on the label.

39.     The size of the Product packaging makes a representation about the quantity of its content, independent of the text on the Product labels and regardless of the label texts' accuracy or inaccuracy. For Defendant's Products, this representation is misleading.

40.     The average reasonable consumer would find herself unable to estimate how much food was in the bag of chips she bought from the weight representation on the bag, as she would not associate the amount of product in a bag with a particular weight, and thus, Defendant was unable to correct its misrepresentations from its product weight label.

41.     Defendant incorporates a serving size and the amount of serving per bag on the back of its bag in the bag's nutrition panel in small font. The average reasonable consumer, as

FDA implicitly suggests with its regulations, does not read the nutrition panel on the back of the bag to determine the quality of food in the bag prior to purchase. She depends on the representations made by the size of the packaging. Even if the average reasonable consumer did read the nutrition label on the back of the bag, she would not be able to understand how large each chip was from the nutrition label and would not be able to estimate the amount of food there was in the bag from the label. As the 3rd Circuit Court of Appeals has observed,

> The question was not whether the ordinary purchaser would expect to find a particular number of [items] in the [container] but whether such a purchaser would expect to find more of the [container] filled. For example, the purchaser of a crate of apples opens the crate and finds it half filled. To determine whether he was deceived we do not ask whether he expected to find a particular number of individual apples in the crate. We do ask whether he expected to find more of the crate filled. This is the pertinent question. People do not think in terms of the number of individual mints when buying them in containers.

United States v. 174 Cases, 287 F.2d 246, 247-48 (3d Cir. 1961). Thus, Defendant was unable to correct its misrepresentations from its serving size label.

42.     Courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349. See *Ackerman v. Coca-Cola Co.,* No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular,' and incorporates the FDCA's labeling provisions"); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *11 (S.D.N.Y. Oct. 26, 2016) ("Here [in a slack-fill case brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA.").

43.     While consumers may have come to expect significant slack-fill in chips products, it does not eliminate Defendant's deception. The FDA has stated that "although consumers may

18

become used to the presence of nonfunctional slack-fill in a particular product or product line, the recurrence of slack-fill over an extended period of time does not legitimize such slack-fill if it is nonfunctional." 58 FR 64123, 64131.

44.     At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Products contained non-functional slack-fill as set forth herein, and would not have bought the Products at the given prices had they known the truth about them.

45.     Defendant's Product packaging was a material factor in Plaintiff and Class members' decisions to purchase the Products because reasonable consumers would attach importance to the quantity of food they believe they are purchasing.

46.     Plaintiff and the Class members reasonably relied on the size of the Product's packaging to infer how much food they were purchasing and reasonably believed that the bags were filled as closely to capacity as functionally possible.

47.     Defendant might argue that Plaintiff and the Class should not have relied on the packaging's size to infer its contents because they could have manipulated the packaging in order to acquire a sense of the slack-fill therein (e.g., shaking the package to hear how much noise the chips makes), but the FDA has stated that such manipulation cannot be reasonably expected of consumers:

> FDA advises that the entire container does not need to be transparent to allow consumers to fully view its contents, i.e., a transparent lid may be sufficient depending on the conformation of the package. On the other hand, FDA finds that devices, such as a window at the bottom of a package, that require consumers to manipulate the package, e.g., turning it upside down and shaking it to redistribute the contents, do not allow consumers to fully view the contents of a container. FDA finds that such devices do not adequately ensure that consumers will not be misled as to the amount of product in a package. Therefore, such foods remain subject to the requirements in § 100.100(a) that slack-fill in the container be functional slack-fill.

58 FR 64123, 64128.

48.     Here, the FDA was contemplating a scenario in which manipulating a package might permit an accurate visual estimate of its contents. This is clearly impossible in the case of Defendant's wholly non-transparent packaging, which can only provide audial or tactile clues as to the Product's slack-fill. But the same basic principle applies: the possibility that manipulating a package might yield additional insight into its contents does not exculpate non-functional slack-fill (just as accurate net weight disclosures do not). The possibility of manipulating the package to discover the truth about it does not mitigate the false statement conveyed by the disproportionately large size of the Product packaging. Likewise the existence of true label statements regarding weight and quantity (if any) do not diminish Defendant's wrongdoing in using a false and misleading packaging size.

**Plaintiff and the Class Were Injured as a Result of Defendant's Deceptive Conduct**

49.     Plaintiff and Class members were injured as the result of Defendant's deceptive conduct because they paid money for less Product than Defendant represented they would be receiving. Plaintiff and the Class were deprived of the benefit of their bargain.

50.     The Doritos bags contain only 29% empty space. This means, the Doritos bag are 71% filled with chips. Defendant's Popcorners® chips are filled only 46% full of chips. Thus, part of the empty space in the Products is non-functional slack fill.

51.     Since the Product bags were 46% full when they should have been **at least** 71% full, Plaintiff received **at most** 63%[6] of what he bargained for. Plaintiff REAVES paid $0.75 for each bag of the Product. Accordingly, **at least** 37%[7] of the purchase price, or about $0.28[8], was unlawfully taken in each bag.

---

[6] $\frac{46\% \text{ actual fill}}{\textbf{71\%} \text{ minimum expected fill}} = 65\%$

[7] 100% - 63% = 37%.

[8] 37% x $0.75 = $0.28.

52.     Plaintiff was injured because Plaintiff did not receive the benefit of his bargain. Plaintiff did not know that the Product he was going to buy contained non-functional slack fill. He expected the product he purchased to be functionally full. Through the size of the product packaging, Defendant made misleading representations to the Plaintiff, and as a result, Plaintiff was misled. Plaintiff would not have purchased the Product at the given price if he had known that the Product would not be functionally full. As the Plaintiff was misled by the Product's packaging, he paid a price that he would not have otherwise consented to pay.

53.     In order for Plaintiff and Class members to be made whole, they must be compensated in an amount of the proportion of the purchase price equal to the percentage of non-functional slack-fill in the Products, which amount Plaintiff and the Class paid for that Defendant did not-deliver. *See Lazaroff v. Paraco Gas Corp.*, 2011 NY Slip Op 52541(U), ¶ 6, 38 Misc. 3d 1217(A), 1217A, 967 N.Y.S.2d 867, 867 (Sup. Ct.) ("Plaintiff alleges that, had he understood the true amount of the product, he would not have purchased it, and that he and the purported members of the class paid a higher price per gallon/pound of propane and failed to receive what was promised and/or the benefit of his bargain, i.e., a full 20 pound cylinder and the amount of propane he was promised. . . Thus, plaintiff has properly alleged injury. Accordingly, the court finds that the plaintiff has stated a claim for a violation of GBL § 349."); *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 406 (E.D.N.Y. 2010) ("Plaintiff alleges that, had he understood 'the true amount of the product,' he 'would not have purchased' it . . . Thus, Plaintiff has properly alleged injury. Accordingly, Plaintiff's § 349 claim survives Defendant's motion); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("Indeed, in his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to

buy the product had he 'known the truth.'. . . Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive.").

## CLASS ACTION ALLEGATIONS

54.     Plaintiff REAVES brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class").

55.     In the alternative, Plaintiff REAVES seeks to represent:

> All persons who made retail purchases of the Products in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class").

56.     The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

57.     Class members are so numerous that joinder of all Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Classes. Other members of the Classes may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

58.     Plaintiff's claims are typical of the claims Class members as they all are similarly affected by Defendant's wrongful conduct.

59.     Plaintiff will fairly and adequately protect the interests of the Class members in that Plaintiff has no interests antagonistic to them. Plaintiff has retained experienced and competent counsel.

60.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the Class members to individually seek redress for the wrongful conduct alleged herein.

61.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual members. These include:

    i.   Whether Defendant packaged, marketed, advertised and/or sold the Products to Plaintiff and Class members using false, misleading and/or deceptive packaging;

    ii.   Whether Defendant's actions constitute violations of 21 U.S.C. § 343(d);

    iii.   Whether Defendant omitted and/or misrepresented material facts in connection with the packaging, marketing, advertising and/or sale of its Product;

    iv.   Whether Defendant's packaging, marketing, advertising and/or selling of its Products constituted an unfair, unlawful or fraudulent practice;

    v.   Whether the packaging of the Products during the class period contained unlawful non-functional slack-fill;

    vi.   Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent future misconduct;

vii.   Whether Class members have sustained damages as a result of Defendant's wrongful conduct;

viii.  Whether Defendant purposely chose non-transparent Product packaging so that Plaintiff and Class members would not be able to see the amount of slack-fill contained in the Product;

ix.    The appropriate measure of damages and/or other relief.

62.    The membership of the Classes is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

63.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will prevent the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

64.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

65.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes

predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

66.     The prosecution of separate actions by individual Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all Class members, although certain Class members are not parties to such actions.

67.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection law of other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

68.     Plaintiff REAVES realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

69.     Plaintiff REAVES brings this claim individually and on behalf of the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General Business Law ("NY GBL") § 349.

70.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

71.     Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

72.     The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products in packaging containing non-functional slack-fill are unfair, deceptive and misleading and are in violation of the NY GBL § 349. Moreover, New York State law broadly prohibits the misbranding of foods in language identical to that found in regulations promulgated pursuant to the FDCA § 403 (21 U.S.C. 343(d)). Under New York Agm. Law § 201, "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading."

73.     The foregoing deceptive acts and practices were directed at consumers.

74.     Defendant should be enjoined from packaging its Products with non-functional slack-fill, as described above, pursuant to NY GBL § 349.

75.     Absent an injunction, Plaintiff REAVES is at risk of continued injury because he can no longer rely on Defendant's packaging, even if the nonfunctional slack-fill is corrected. Plaintiff REAVES might hesitate to purchase Defendant's Products even if it ceases its unlawful packaging practices and begins packaging its Products without slack-fill. If the Products are no longer sold with non-functional slack-fill, then Plaintiff REAVES could not take advantage of those Products because he has been misled into believing that the Products have non-functional slack-fill. The 9th Circuit has recently embraced this approach:

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now

knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. [*Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142, 1148 (2009).] Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that he will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although he would like to. *See, e.g.,* [*Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012)]; *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JT, 2015 U.S. Dist. LEXIS 34498, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015) ("[U]nless the manufacturer or seller has been enjoined from making the same representation, [the] consumer . . . won't know whether it makes sense to spend her money on the product.").

*Davidson v. Kimberly-Clark Corp.,* 873 F.3d 1103, 1115 (9th Cir. 2017).

76.     The Court should follow the lead of California Federal Courts and recognize that a plaintiff may be injured after he learns of a manufacturer's deception, even though he is unlikely to fall victim to the exactly the same scheme again in exactly the same manner. To hold otherwise would immunize manufacturers and render injunctive relief impossible in consumer fraud class action lawsuits – if learning of a deception removed a Plaintiff's standing to seek an injunction, then wrongdoers could violate the law with impunity, defeating the purpose of consumer protection statutes.

77.     Plaintiff REAVES, on behalf of himself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection law of other states and the District of Columbia to the extent New**

York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of
the New York Class)

78.    Plaintiff REAVES realleges and incorporates herein by reference the allegations

contained in all preceding paragraphs, and further alleges as follows:

79.    Plaintiff REAVES brings this claim individually and on behalf of the other

members of the Class for violations of NY GBL § 349.

80.    Any person who has been injured by reason of any violation of NY GBL § 349

may bring an action in her own name to enjoin such unlawful acts or practices, an action to

recover her actual damages or fifty dollars, whichever is greater, or both such actions. The court

may, in its discretion, increase the award of damages to an amount not to exceed three times the

actual damages up to one thousand dollars, if the court finds the defendant willfully or

knowingly violated this section. The court may award reasonable attorney's fees to a prevailing

plaintiff.

81.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive

acts and practices by misbranding its Products so that they appear to contain more in the

packaging than is actually included.

82.    The practices employed by Defendant, whereby Defendant advertised, promoted,

marketed and sold its Products in packages containing non-functional slack-fill are unfair,

deceptive and misleading and are in violation of the NY GBL § 349, New York Agm. Law § 201

and the FDCA (21 U.S.C. § 343(d)) in that said Products are misbranded.

83.    The foregoing deceptive acts and practices were directed at consumers.

84.    Plaintiff REAVES and the other Class members suffered a loss as a result of

Defendant's deceptive and unfair trade practices. Specifically, as a result of Defendant's

deceptive and unfair acts and practices, Plaintiff REAVES and the other Class members suffered

monetary losses from the purchase of Products, i.e., receiving less than the capacity of the

packaging due to non-functional slack-fill in the Products. In order for Plaintiff REAVES and

Class members to be made whole, they must receive a refund of the purchase price of the

Products equal to the percentage of non-functional slack-fill in it.

### COUNT III

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a(1) (FALSE ADVERTISING)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection law of other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

85.     This claim is brought on behalf of Plaintiff REAVES and members of the Class

against Defendant.

86.     Plaintiff REAVES realleges and incorporates by reference the allegations

contained in all preceding paragraphs, and further alleges as follows:

87.     Defendant has been and/or is engaged in the "conduct of . . . business, trade or

commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

88.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the

conduct of any business, trade or commerce." False advertising means "advertising, including

labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into

account "the extent to which the advertising fails to reveal facts material in light of . . .

representations [made] with respect to the commodity . . . " N.Y. Gen. Bus. Law § 350-a(1).

89.     Pursuant to the FDCA as implemented through 21 C.F.R. § 100.100, package size

is an affirmative representation of quantity. Thus, the non-functional slack-fill in Defendant's

Products constituted false advertising as to the quantity of chips contained therein. Defendant

caused this false advertising to be made and disseminated throughout New York and the United

States. Defendant's false advertising was known, or through the exercise of reasonable care should have been known, by Defendant to be deceptive and misleading to consumers.

90.     Defendant's affirmative misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendant's material misrepresentations.

91.     Defendant has violated N.Y. Gen. Bus. Law § 350 because its misrepresentations and/or omissions regarding the Products, as set forth above, were material and likely to deceive a reasonable consumer.

92.     Plaintiff REAVES and members of the Class have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising. In purchasing the Products, Plaintiff REAVES and members of the Class relied on the misrepresentations regarding the quantity of the Products that was actually chips rather than non-functional slack-fill. Those representations were false and/or misleading because the Products contains substantial hidden non-functional slack-fill. Plaintiff and the Class were deprived of the benefit of their bargains when they purchased the Products and received mostly air.

93.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff REAVES and members of the Class seek monetary damages (including actual, minimum, punitive, treble, and/or statutory damages), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

94.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

95.    Through its Product packaging, Defendant intentionally made materially false and misleading representations regarding the quantity of chips that purchasers were actually receiving.

96.    Plaintiff and Class members were induced by, and relied upon, Defendant's false and misleading representations and did not know the truth about the Products at the time they purchased it.

97.    Defendant knew of its false and misleading representations. Defendant nevertheless continued to promote and encourage customers to purchase the Products in a misleading and deceptive manner, intending that Plaintiff and the Class rely on its misrepresentations.

98.    Had Plaintiff and the Class known the actual amount of chips they were receiving, they would not have purchased the Products.

99.    Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

100.    Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud. In order for Plaintiff and Class members to be made whole, they need to receive a refund compensating them for the shortfall in the Products they purchased.

31

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seeks judgment against Defendant, as follows:

a.  An Order that this action be maintained as a class action and appointing Plaintiff as representative of the Nationwide Class or, in the alternative, the New York Class;

b.  An Order appointing the undersigned attorney as class counsel in this action;

c.  Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.  All recoverable compensatory and other damages sustained by Plaintiff and the Class;

e.  Actual and/or statutory damages for injuries suffered by Plaintiff and the Class and in the maximum amount permitted by applicable law;

f.  An order (i) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (ii) enjoining Defendant from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (iii) ordering Defendant to engage in a corrective advertising campaign; and (iv) requiring Defendant to reimburse Plaintiff and all members of the Class in an amount up to the purchase price of the Product;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

i.  Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.


Dated: 3/7/2018

Respectfully submitted,

/s/ *C.K. Lee*_____
By:  C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*